IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PARDEEP SINGH,

    Petitioner,               2: 11 - cv - 944 - TJB

    vs.

RAUL LOPEZ, et al.,

    Respondents.        <u>ORDER</u>

_____/

## I.  INTRODUCTION

Petitioner is a state prisoner and is proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), Petitioner and Respondent consented in May 2011 to have a United States Magistrate Judge conduct all further proceedings in this case.

Petitioner was convicted by a jury of seven counts of attempted murder and one count of shooting from a vehicle.  He received a sentence of 170 years to life plus life with the possibility of parole on his convictions.  Petitioner raises two claims in this federal habeas petition.  First, Petitioner asserts that his Constitutional rights to due process and a fair trial under the Fifth and Fourteenth Amendments were violated when the state court denied his request for a new trial based on newly discovered evidence ("Claim I").  Second, Petitioner asserts that trial counsel

1

was ineffective ("Claim II"). For the following reasons, the habeas petition will be denied.

## II. FACTUAL BACKGROUND[1]

This case involves a nighttime drive-by shooting of several people in a parking lot of a Stockton restaurant on May 14, 2006.

The story begins earlier that day, at a kabaddi tournament in Stockton. Kabaddi is a rugby-like game, popular with Punjabi and Sikh cultures.

Defendants Pardeep and Kulwant [FN 1] attended the tournament, and were seen throughout the day disputing the tournament committee's decision to bar a particular player. Defendant Pardeep confronted Satwinder G. (also known as "John"), and defendant Kulwant threatened a committee member, Manjit U., over this issue. Satwinder is a longtime kabaddi supporter and an apparently prominent, wealthy member of the Sikh/Punjabi community.

> [FN 1] Because many of the people involved in this case share the same last names, for clarity we will use first names.

Later in the day, a physical fight broke out at the tournament. On one side of the scuffle were defendants and two of their friends, Sarwan S., who had a knife, and "Happy," who brandished a gun. After the fight, defendant Pardeep told committee member Manjit that "[w]e're not going to let [Satwinder] take the cup [first-place trophy] today no matter what happens." But that is what happened, as the team sponsored by Satwinder won the tournament. Many of the eyewitnesses to this fight were also eyewitnesses and/or victims in the later shooting, and at least two of these eyewitnesses (Gurdev A. and Belhar R.) actually fought against defendants' faction.

At the tournament, it was announced there would be a post-tournament dinner at the Sansar Restaurant in Stockton. And after that dinner ended around 11:15 p.m, Satwinder, along with eight other people who had been at the tournament, walked out to the restaurant's parking lot. At this point, a slow-moving silver BMW drove by and its front and rear passengers discharged a barrage of gunfire at Satwinder's group.

Four of the people in Satwinder's group – Satwinder himself, Gurdeep S., Raghbir S., and Belhar R. – all of whom knew both defendants, positively identified defendants as the shooters. Two

---

[1] The factual background is taken from the Court of Appeal of the State of California, Third Appellate District opinion dated March 8, 2010 which Petitioner attached to his federal habeas petition.

2

others Gurdev A. and Gulwinder S. – identified defendant Kulwant as a shooter.

The defense highlighted inconsistencies between these testimonial identifications and some statements provided to law enforcement. For example, Satwinder initially stated to law enforcement that he did not see what the shooters were wearing, but several hours later described defendant Pardeep's attire; Gurdeep, while being treated at the hospital, did not identify defendants and said he was unable to get a good look at the shooters; Raghbir, while also at the hospital being treated, was unable to describe the vehicle involved though he did so at trial; Belhar told officers at one point he did not know the people who were shooting (language comprehension may have been an issue here); and Gurdev gave inconsistent statements as to defendant Pardeep being a shooter.  Furthermore, Satwinder was close with all of these eyewitnesses.  One other individual Santokh J., who owned the Sansar Restaurant and who was not close with these eyewitnesses, also witnessed the shooting.  He was standing near Satwinder, and was shot three times.  Although Santokh could not identify the shooters, he heard Satwinder mention the names "Kulwant and Pardeep" right after the bullets flew.  Moreover, Santokh had told a police officer that one of the shooters was an Indian male wearing an orange or yellow t-shirt (which matched the description for both defendants).

A "tip" led officers to the silver BMW, and the car was towed to a Department of Justice (DOJ) crime lab on May 16.  The car was apparently owned by a friend of defendants and sold about a month after the shooting.  [FN 2]  A DOJ firearms expert and a DOJ fingerprint expert did not obtain from the car any inculpatory evidence within their respective realms, but both experts noted that the car had been recently cleaned thoroughly.

> [FN 2]  The friend was Jasvir G., who was also charged with the crimes.  These charges, however, were dismissed after the preliminary hearing.

Cell phone records for defendants were introduced.  In addition to listing calls made and received, cell phone records can show the approximate location of a cell phone, which links to the nearest cell tower during calls.  Defendant Kulwant's records displayed a 7:23 p.m. call on May 14 linked to a tower near the kabaddi tournament, and calls at 10:51 and 10:52 p.m. that night linked to another tower within a half mile of the Sansar Restaurant (these two tower sites are on opposite sides of Stockton – Charter Way and near Hammer Lane, respectively).  Defendant Pardeep's records show a flurry of seven calls between his cell phone and one particular phone number between 10:57 p.m. and 11:26 p.m. on May 14.  Defendant Pardeep's cell phone received calls from this number again at 11:27, 11:33 and 11:44 p.m.  The Sansar Restaurant shooting was first reported in a 911 call at 11:32 p.m.

3

> There was also evidence that defendant Pardeep had changed his appearance after the incident and before his trial – he shaved his long beard and discarded his turban.
>
> The defense theory was that Satwinder G. is a powerful figure in the Sikh community who wanted defendants blamed for the shooting after they had insulted him at the kabaddi tournament, and that the other witnesses felt obliged to support Satwinder because they knew him well. In support of this defense, defendants, as noted, highlighted some inconsistencies between eyewitness testimony and statements to law enforcement. Additionally, defendant Pardeep offered Sarwan S. as an alibi witness (Sarwan effectively testified he was with Pardeep for most of the May 14 night, but this defense was undercut by Sarwan's additional testimony that he did drop Pardeep off at Pardeep's home earlier that night and by Pardeep's phone records indicating that Pardeep's cell phone called Sarwan's cell phone at 9:02 p.m.). The defense also questioned the lighting conditions at the site of the shooting, and noted that Satwinder had launched his own investigation into the shooting even though he had positively identified defendants as the shooters to the police.
>
> In rebuttal, Manjit U. testified that Sarwan S. came to the Sansar restaurant after the shooting and told him, "I tried to stop them [i.e. Kulwant, Pardeep and Happy], but they wouldn't stop.

People v. Singh, No. C058988, 2010 WL 765453, at *1-2 (Cal. Ct. App. 3d Dist. Mar. 8, 2010).

### III. PROCEDURAL HISTORY

After Petitioner was convicted and sentenced, he filed a direct appeal to the California Court of Appeal. Petitioner raised one issue in that appeal, specifically, whether the trial court improperly denied his request to admit evidence of third-party culpability. On March 8, 2010, the California Court of Appeal affirmed the judgment.

As Petitioner was proceeding with his direct appeal, he also filed separate state petitions for writ of habeas corpus. In those petitions, Petitioner asserted the claims he raises in this federal petition. In June and August 2009, the San Joaquin County Superior Court denied Petitioner's state habeas petitions in written opinions.[2] The California Court of Appeal summarily denied the state habeas petition on November 25, 2009. The California Supreme

---

[2] Petitioner attached copies of these Superior Court decisions to his federal habeas petition.

4

Court summarily denied the state habeas petition on July 28, 2010.

In April 2011, Petitioner filed the instant federal habeas petition. Respondent answered the petition in June 2011. Petitioner filed a reply in July 2011.

## IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States. See 28 U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1994); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies. See Lindh v. Murphy, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. See 28 U.S.C. 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'" Id. (citations omitted). Under the unreasonable application clause, a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." See Williams v. Taylor, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.

5

1  Rather, that application must also be unreasonable." Id. at 411.  Although only Supreme Court
2  law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in
3  determining whether a state court decision is an objectively unreasonable application of clearly
4  established federal law.  See Clark v. Murphy, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only
5  the Supreme Court's precedents are binding . . . and only those precedents need be reasonably
6  applied, we may look for guidance to circuit precedents.").

## V. ANALYSIS OF PETITIONER'S CLAIMS

### A. Claim I

In Claim I, Petitioner asserts that "the California Courts erred in failing to grant Singh a new trial, because the newly discovered evidence of four witnesses called into serious questions the identification at trial of Singh by several witnesses." (Pet'r's Mem. P. & A. at p. 9.)  The last reasoned decision on this Claim came from the two Superior Court decisions which analyzed Petitioner's state habeas petitions.  In the first petition, the Superior Court stated the following::

> In his Petition, Petitioner first alleges that his petition should be granted due to the discovery of new evidence.  Petitioner's present counsel made contact with three new witnesses.  Each new witness would testify that some of the prosecution's witnesses told them that it was not possible to identify the shooters and Petitioner was identified as a shooter simply because of his involvement in the brawl at the Kabadi tournament.  Also, the new witnesses heard comments that Petitioner was not involved in the shooting and these comments were made in the presence of some of the prosecution's witnesses and they did not contradict these statements.  Hence, the testimony of these new witnesses would effectively impeach the testimony of the eye witnesses the prosecution called to the stand.
>
> [N]ewly discovered evidence is a basis for relief only if it undermines the prosecution's entire case.  It is not sufficient that the evidence might have weakened the prosecution case or presented a more difficult question for the judge or jury.  (In re Hall (1981) 30 Cal.3d 408, 417 [179 Cal.Rptr. 223, 637 P.2d 690]; In re Weber (1974) 11 Cal.3d 703, 724 [114 Cal.Rptr. 429, 523 P.2d 229]; In re Branch (1969) 70 Cal.2d 200, 215 [74 Cal.Rptr. 238, 449 P.2d 174].)  "[A] criminal judgment may be collaterally attacked on the basis of 'newly

6

> discovered' evidence only if the 'new' evidence casts fundamental doubt on the accuracy and reliability of the proceedings. At the guilt phase, such evidence, if credited, must undermine the entire prosecution case and point unerringly to innocence or reduced culpability." (People v. Gonzalez (1990) 51 Cal.3d 1179, 1246 [275 Cal.Rptr. 729, 800 P.2d 1159].)
>
> In re Clark (1993) 5 Cal.4th 750, 766, 21 Cal.Rprt.2d 509.)
>
> Petitioner's new evidence comes in the form of witnesses who can provide nothing more than hearsay. Were this evidence to be admitted, it would simply impeach the credibility of some of the prosecution's witnesses. This is not enough to point unerringly to Petitioner's innocence. At most, this new evidence would simply weaken the prosecution case or present a more difficult question for the trier of fact. Moreover, Petitioner indicates that the prosecution's case rested on the testimony of its eyewitnesses. A review of the trial transcripts reveals that the prosecution also presented evidence of Petitioner and Gadri's respective cell phone call records from the day of the shooting, which revealed phone calls between Petitioner and Petitioner's alibi during the time they were supposedly together and calls from Petitioner's cell phone to his home phone when he was supposedly at home. Further, the prosecution introduced evidence that Petitioner and Gadri's friend owned a vehicle identical to the one involved in the shooting. It was also shown that the friend's vehicle was washed and vacuumed prior to the police showing up and then sold a month later. Thus, even if Petitioner's new evidence undermined the testimony of the prosecution's eyewitnesses, it does not undermine the prosecution's entire case.

In re Singh, Case No. SF 102738C, slip op. at p. 1-2 (Super. Ct. Cal. County San Joaquin filed June 9, 2009).

With respect to Petitioner's second state habeas petition, the Superior Court stated the following with respect to the remaining part of Claim I:

> In the most recent Petition, Petitioner contends that he has additional newly discovered evidence. The evidence is another "new" witness, Sarwan Singh, who provided a declaration for this petition. According to Sarwan's declaration, two weeks after Petitioner was found guilty, Sarwan had a face-to-face conversation with Gulwinder Singh, one of the prosecution's eyewitnesses. Sarwan questioned Gulwinder as to if he actually saw "Gadri" (Petitioner's co-defendant) as one of the shooters. Gulwinder said he identified Gadri because it "looked like him"

and on the day of the shooting, Gadri had been involved in a fight at the Kabadi tournament. Also, Gadri's bad appearance and conduct at the trial convinced Gulwinder that Gadri was guilty. Sarwan further states that he secretly recorded this conversation and is still in possession of the recording.

> [N]ewly discovered evidence is a basis for relief only if it undermines the prosecution's entire case. It is not sufficient that the evidence might have weakened the prosecution case or presented a more difficult question for the judge or jury. (In re Hall (1981) 30 Cal.3d 408, 417 [179 Cal.Rptr. 223, 637 P.2d 690]; In re Weber (1974) 11 Cal.3d 703, 724 [114 Cal.Rptr. 429, 523 P.2d 229]; In re Branch (1969) 70 Cal.2d 200, 215 [74 Cal.Rptr. 238, 449 P.2d 174].) "[A] criminal judgment may be collaterally attacked on the basis of 'newly discovered' evidence only if the 'new' evidence casts fundamental doubt on the accuracy and reliability of the proceedings. At the guilt phase, such evidence, if credited, must undermine the entire prosecution case and point unerringly to innocence or reduced culpability." (People v. Gonzalez (1990) 51 Cal.3d 1179, 1246 [275 Cal.Rptr. 729, 800 P.2d 1159].)

In re Clark (1993) 5 Cal.4th 750, 766, 21 Cal.Rprt.2d 509.)

Just as in Petitioner's first Petition for Writ of Habeas Corpus, Petitioner's new evidence comes in the form of a witness who can provide nothing more than hearsay. Were this evidence to be admitted, it would simply impeach the credibility of _one_ of the prosecution's witnesses. This is not enough to point unerringly to Petitioner's innocence. At most, this new evidence would simply weaken the prosecution case or present a more difficult question for the trier of fact. Moreover, Petitioner indicates that the prosecution's case rested on the testimony of its eyewitnesses. A review of the trial transcripts reveals that the prosecution also presented evidence of Petitioner and Gadri's respective cell phone call records from the day of the shooting, which revealed phone calls between Petitioner and Petitioner's alibi during the time they were supposedly together and calls from Petitioner's cell phone to his home phone when he was supposedly at home. Further, the prosecution introduced evidence that Petitioner and Gadri's friend owned a vehicle identical to the one involved in the shooting. It was also shown that the friend's vehicle was washed and vacuumed prior to the police showing up and then sold a month later. Thus, even if Petitioner's new evidence undermined the testimony of the prosecution's eyewitnesses, it does not undermine the prosecution's entire case. Finally, a careful read of Sarwan's declaration "explains" why Gulwinder identified Gadri, but no

8

explanation is given as to why he identified Petitioner.
In re Singh, Case No. SF 102738C, slip op. at p. 1-2 (Super. Ct. Cal. County San Joaquin filed Aug. 25, 2009) (emphasis in original).

The United States Supreme Court has expressly left open the question of whether an actual innocence claim based on newly discovered evidence is cognizable for federal habeas review in a non-capital case. See Dist. Attorney's Office for Third Judicial Dist. v. Osbourne, 129 S.Ct. 2308, 2321 (2009) (stating whether federal constitutional right to be released upon proof of "actual innocence" is an open question); Herrera v. Collins, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state proceeding."). In the absence of Supreme Court authority establishing the cognizability of a freestanding actual innocence claim on federal habeas review, the state court's rejection of this Claim could not be contrary to, or involve an unreasonable application of clearly established federal law. See Carey v. Musladin, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from the Court regarding the [issue in dispute,] it cannot be said that the state court 'unreasaonabl[y] appli[ed] clearly established Federal law.'") (quoting 28 U.S.C. § 2254(d)(1)); Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004) ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." (citation omitted)).

Nevertheless, even if Petitioner did state a cognizable federal habeas argument within Claim I, he still would not be entitled to federal habeas relief. The threshold to make out a successful freestanding claim of actual innocence is "extraordinarily high" and the showing needs to be "truly persuasive." See Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir. 1997). Accordingly, "a habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent."

Id. (citing Herrera, 506 U.S. at 442-44 (Blackmun, J., dissenting)). Petitioner fails to make this showing. Petitioner's "newly discovered" evidence are affidavits from witnesses based on hearsay. The Supreme Court has observed that affidavits based on hearsay are particularly suspect because they are obtained without the benefit of cross-examination and the ability to make credibility determinations. See Herrera, 506 U.S. at 417. The affidavits do not affirmatively prove that he is probably innocent. Therefore, Petitioner is not entitled to federal habeas relief on Claim I even if it did raise a cognizable federal habeas argument.

B.  Claim II

In Claim II, Petitioner argues that his:

> Federal constitutional right to effective assistance of counsel under the Sixth and Fourteenth Amendments were violated by the actions of his trial counsel during the state proceedings, when trial counsel failed to secure the testimony of a critical witness, and when trial counsel failed to object to the introduction by the state prosecutor of prejudicial hearsay testimony.

(Pet'r's Pet. at p. 7.) The last reasoned decision on these ineffective assistance of counsel arguments was from the California Superior Court which analyzed Petitioner's first habeas petition. That court stated the following in analyzing Petitioner's arguments:

> Petitioner's second grounds for requesting habeas corpus is ineffective assistance of council. [sic] Petitioner claims that his attorney failed to secure the extremely favorable and exonerating testimony from Amritpal Singh. At the time of the shooting, Amritpal was a 15 year old boy who was among the group in the parking lot when the gun fire erupted. After the shooting, Amritpal gave a statement to the police in which his description of the backseat shooter did not match either Petitioner or Gadri. On November 16, 2006, Amritpal reiterated his original statement to the investigator hired by Petitioner's then attorney. He further told this investigator that he had seen pictures of the two men arrested for the shooting and neither one of them was the man he saw shooting from the backseat of the vehicle.
>
> On February 22, 2007, Amritpal maintained his version of the facts during his direct testimony at Petitioner and Gadri's preliminary hearing. During Amritpal's cross-examination at this hearing, the court took a break from proceedings which were set to resume the following day. However, when court resumed the next morning,

Amritpal did not appear; instead, Amritpal's aunt and father appeared and informed the court that due to the stress of the situation, Armritpal was unable to attend. This led to six (6) continuances for resumption of Amritpal's testimony, but he never appeared. On May 22, 2007, the court refused any further continuances, struck Amritpal's testimony, and held Petitioner and Gadri to answer to the charges.

On November 14, 2007, at Petitioner and Gadri's second trial [FN 1], pursuant to a motion submitted by Petitioner's counsel, the court entered an Order directing the County Sheriff to serve a defense subpoena on Amritpal based on the showing that he was concealing himself to avoid service of subpoena. Pursuant to said Order, on November 20, 2007, a deputy sheriff served a subpoena on Amritpal's father for Amritpal to appear in court as a witness. Amritpal's father failed to appear, and on February 20, 2008, the court issued a bench warrant for his arrest.

> [FN 1] Petitioner and Gadri's first trial ended in a hung jury. Their second trial ended in a mistrial due to a conflict of interest for Petitioner's counsel. The third trial ended in a jury verdict of guilty on all counts.

At Petitioner and Gadri's third trial, the issue of Amritpal's testimony was discussed several times. Although defense counsel maintained that Amritpal's testimony was crucial to the defense, after much discussion and several attempts, Amritpal never took the stand.

Accordingly, it is Petitioner's position that his attorney's failure to secure Amritpal's testimony and call Amritpal as a witness at trial amounts to ineffective assistance of counsel. Petitioner contends that "it was incumbent on defense counsel to take every step necessary to secure his attendance at trial." As such, his attorney should have made initial attempts to subpoena the witness for the 2008 trial and counsel should have also taken the necessary steps to provide the necessary information to the police and sheriff departments to serve the warrant issued on February 20, 2008. Hence, Petitioner argues that counsel's failure to follow these recognized avenues to insure Amritpal testified in trial amounts to ineffective assistance of counsel.

Moreover, Petitioner asserts that omission of Amritpal's testimony prejudiced Petitioner's defense. The testimony was extremely favorable and exonerating and would have also effectively impeached the reliability and accuracy of the eyewitnesses' identification of Petitioner and Gadri.

> A claim of ineffective assistance of counsel has two components: "'First, the defendant must show that

counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' [Citation.] [¶] To establish ineffectiveness, a 'defendant must show that counsel's representation fell below an objective standard of reasonableness.' [Citation.] To establish prejudice he 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citation.]" (Williams v. Taylor (2000) 529 U.S. 362, 390-391, 120 S.Ct. 1495, 1511-1512, 146 L.Ed.2d 389, citing Strickland v. Washington (1984) 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674; In re Jones (1996) 13 Cal.4th 552, 561, 54 Cal.Rptr.2d 52, 917 P.2d 1175.) The ineffectiveness must "deprive the defendant of a substantive or procedural right to which the law entitles him." (Williams v. Taylor, supra, 529 U.S. at p. 393, 120 S.Ct. At p. 1513, fn. omitted.)

In re Vargas (2000) 83 Cal.App.4th 1125, 1132-1133, 100 Cal.Rptr.2d 265.

First, Petitioner claims that his attorney should have subpoenaed Amritpal prior to the start of the 2008 trial. However, Petitioner fails to show that defense counsel's decision to obtain a bench warrant for Amritpal's father, rather than a subpoena for Amritpal, was anything more than a trial tactic.

Second, Petitioner asserts that although the bench warrant was issued, defense counsel was obligated to ensure it the police and sheriff's departments had the necessary information to execute the warrant. However, Petitioner provides no evidence to this claim and himself admits that "[i]t is not clear if that information was ever provided. . ."

Third, Petitioner has failed to show that there is a reasonable probability that Amritpal's testimony would have resulted in a different outcome for Petitioner. Assuming Amritpal would have testified as Petitioner claims he would have, this testimony would have only served to impeach the credibility of some of the prosecution's witnesses. It would not have undermined the

| | |
|---|---|
| 1 | prosecution's entire case. |
| 2-6 | Finally, Petitioner also argues that he had ineffective assistance of counsel because defense counsel failed to object to repeated admissions of multiple hearsay statements.  According to Petitioner, "Counsel was also ineffective in failing to object to hearsay testimony from several investigating officers.  Testimony was objectionable, and its admission tended to improperly bolster the testimony of eyewitnesses.  Reasonably competent counsel would have objected to this testimony and the failure to do so prejudiced [P]etitioner's defense." |
| 7-12 | Just like above, Petitioner has failed to show that defense counsel's actions were anything other than trial tactics.  Furthermore, once again, Petitioner has not shown that had the trial judge sustained such hearsay objections, that the absence of such testimony would have changed the ultimate result of the proceedings.  Petitioner himself states in his petition that the testimony simply bolstered the testimony of eyewitnesses.  However, Petitioner has not shown that a lack of this bolstering would have changed the outcome.  Again, Petitioner ignores the fact that the prosecution put on other evidence besides the testimony of eyewitnesses. |

In re Singh, Case No. SF 102738C, slip op. at p. 2-4 (Super. Ct. Cal. County San Joaquin filed June 9, 2009).

      The Sixth Amendment guarantees effective assistance of counsel.  In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating ineffective assistance of counsel.  First, the petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  See id. at 688.  Petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  See id. at 690.  The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the range of professional competent assistance.  See id.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Id.

      Second, a petitioner must affirmatively prove prejudice.  See id. at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." Id. at 694.  A reasonable probability is "a probability sufficient to undermine the confidence in the outcome." Id.  "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, __ U.S. __, 131 S.Ct 770, 792, 178 L.Ed.2d 624 (2011).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by defendant as a result of the alleged deficiencies . . . [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (citing Strickland, 466 U.S. at 697).  When analyzing a claim for ineffective assistance of counsel where a state court has issued a decision on the merits, a habeas court's ability to grant the writ is limited by two "highly deferential" standards. Premo v. Moore, __ U.S. __, 131 S.Ct. 733, 740, 178 L.Ed.2d 649 (2011).  "When § 2254(d) applies the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. (internal quotation marks and citation omitted); see also Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) ("Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied Strickland incorrectly.  Rather, it is the habeas applicant's burden to show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner.") (citations omitted).

In order to show ineffective assistance of counsel, the Petitioner must show that the particular witness was willing to testify, see United States v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988); would have testified, see Allen v. Woodford, 366 F.3d 823, 846 n. 2 (9th Cir. 2004), amended by, 395 F.3d 979, 1002 n. 2 (9th Cir. 2005); what their testimony would have been, see United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987); and that their testimony would have been sufficient to create a reasonable doubt of guilt. See Tinsley v. Borg, 895 F.2d 520, 532 (9th Cir. 1990).  Petitioner fails to show that Amritpal would have testified at trial.  The

record indicated that Amritpal would not have testified at trial. There was a subpoena issued for his appearances along with six continuances which were ordered to obtain his presence. Furthermore, a warrant was also issued and given to his father in an attempt to obtain Amritpal's presence at trial. Thus, Petitioner fails to show that Amritpal would have testified at trial. The record as described above indicates that Amritpal would not have testified at trial. Accordingly, under these circumstances, Petitioner fails to show that he is entitled to federal habeas relief on this portion of Claim II.

Next, Petitioner argues as follows:

> Counsel for Pardeep Singh was ineffective at trial for failing to at least keep out of evidence the repeated, hearsay testimony of law enforcement agents, who the prosecutor used to buttress the questionable testimony of its witnesses.
>
> At trial, the prosecutor introduced, without objection, (a) hearsay testimony from Detective Reyes that Satwinder Gill told him that the shooter wore a colored turban; (b) hearsay testimony from Officer Hutto that Raghbir Shergill told him that the argument at the kabaddi tournament might have led to the shooting, the color and make of the car carrying the shooters, the path it took, and how many people were injured; (c) hearsay testimony from Officer Berry about descriptions of the shooters and the car from Santokh Judge, Behar Ranu, and Gurdeep Shergill; (d) hearsay testimony from Detective McDonald about statements from Belhar Ranu, Santokh Judge, and Gary Shergill, about the argument at the tournament and descriptions of the shooters and the car involved; and (e) hearsay testimony from Detective Faine about statements from Belhar Ranu, Gary Shergill, and Gurdeep Shergill about the argument at the tournament and descriptions of the shooters and the car involved.

(Pet'r's Mem. P. & A. at p. 23-24.)

Petitioner's argument centers around the statements that the police testified the eyewitnesses told them regarding the shooting. However, the police officers' testimony was largely cumulative of the eyewitness testimony at trial. Eyewitnesses testified at trial regarding the identification of the shooters, the car involved in the shooting and the argument at the kabaddi tournament. By way of example only, Satwinder Gill testified at trial that Petitioner was wearing a yellowish color turban. (See Reporter's Tr. at p. 124.) Raghbir Shergill testified about

15

the argument at the kabaddi tournament, the color and make of the car that did the shooting as well as the people that were injured by the shooting. (See id. at p. 710, 719, 721). Belhar Ranu and Gurdeep Shergill testified at trial and identified Petitioner as a shooter. (See id. at p. 569-70, 820.) Ranu testified about the argument at the kabaddi tournament. (See id. at p. 598-99). Additionally, Ranu and Judge described the color and make of the car where the shots came from. (See id. at p. 578, 782.)

The failure to object to the purported hearsay testimony of what these witnesses told the officers did not prejudice Petitioner. See Delgadillo v. Woodford, 527 F.3d 919, 930 n. 4 (9th Cir. 2008) (ineffective assistance claim failed on the merits where the testimony was largely cumulative). As the above citations indicate, several eyewitnesses directly testified as to the argument at the kabaddi tournament, the color and make of the car, and perhaps most importantly describing Petitioner as one of the shooters. Petitioner fails to show to a reasonable probability that the outcome of the proceeding would have been different had counsel objected to the police officers' testimony on what these witnesses told them when they were questioned. These witnesses testified at trial and what they told the police was largely cumulative of their trial testimony which was not hearsay. Additionally, as previously noted, multiple eyewitnesses identified Petitioner as the shooter at trial. As previously noted, to show prejudice, the likelihood of a different result must be substantial, not just conceivable. See Harrington, 131 S.Ct. at 792. Petitioner fails to meet that standard. For the foregoing reasons, this ineffective assistance of counsel argument does not merit federal habeas relief.

## VI.  CONCLUSION

For the reasons discussed in this Order, Petitioner is not entitled to federal habeas relief. Should petitioner wish to appeal to appeal the court's decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The certificate of appealability must "indicate which specific issue or issues satisfy" the

requirement. 28 U.S.C. § 2253(c)(3).

A certificate of appealability should be granted for any issue that petitioner can demonstrate is "'debatable among jurists of reason,'" could be resolved differently by a different court, or is "'adequate to deserve encouragement to proceed further.'" <u>Jennings v. Woodford</u>, 290 F.3d 1006, 1010 (9th Cir. 2002) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)). In this case, however, Petitioner failed to make a substantial showing of the denial of a constitutional right with respect to any issue presented.

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's petition for writ of habeas corpus is DENIED;

2. A certificate of appealability shall not issue; and

3. The Clerk is directed to close this case.

DATED: April 6, 2012

                                   _____
                                   TIMOTHY J BOMMER
                                   UNITED STATES MAGISTRATE JUDGE